AO 108 (Rev. 06/09) Application for a Warrant to Seize Property Subject to Forfeiture

# UNITED STATES DISTRICT COURT

for the

Northern District of Texas

In the Matter of the Seizure of )
*(Briefly describe the property to be seized)* )
Any funds, up to $23,397.07, in Bank of America )    Case No.    2:20-MJ-108
account 354011819004 )
)

## APPLICATION FOR A WARRANT
## TO SEIZE PROPERTY SUBJECT TO FORFEITURE

I, a federal law enforcement officer or attorney for the government, request a seizure warrant and state under penalty of perjury that I have reason to believe that the following property in the _____Northern_____ District of

_____Texas_____ is subject to forfeiture to the United States of America under ____21____ U.S.C. §

____853____ *(describe the property)*:

Any funds, up to $23,397.07, in Bank of America account 354011819004.

The application is based on these facts:
See attached affidavit.

☑ Continued on the attached sheet.

_____
*Applicant's signature*

Malcolm White, DEA TFO
*Printed name and title*

Sworn to before me and signed in my presence.

Date: __8/5/2020__

_____
*Judge's signature*

City and state:   Amarillo, Texas

Lee Ann Reno, U.S. Magistrate Judge
*Printed name and title*

## AFFIDAVIT IN SUPPORT OF APPLICATION FOR SEIZURE WARRANTS

I, Malcolm White, after being duly sworn, depose and state as follows:

1.      I am employed by the Texas Department of Public Safety (DPS) a Special Agent.
I am presently assigned to the Drug Enforcement Administration (DEA) as a Task Force
Agent in the Amarillo, Texas office of the DEA.  My duties include investigating alleged
violations of the laws of the United States, to include Title 21, United States Code,
Sections 841(a)(1) and 846 (Conspiracy to Distribute and Possess with Intent to
Distribute Controlled Substances).

2.      The statements set forth in this affidavit are true and correct to the best of my
knowledge.  The facts in this affidavit come from information obtained from records,
witnesses, and other law enforcement officers, agents, or analysts.  This affidavit is
intended to show merely that there is sufficient probable cause for the requested seizure
warrants and does not set forth all of my knowledge about this investigation.

3.      This affidavit is in support of an application for three (3) seizure warrants for the
following property:

> Any funds, up to $23,397.07, in Bank of America account 354011819004;
>
> Any funds, up to $13,736.71, in Bank of America account 355009344409; and
>
> Any funds, up to $44,807.77, in Bank of America account 355009936710.

## INTRODUCTION

4.      In connection with my duties and responsibilities as a Special Agent with the
Texas Department of Public Safety (DPS) and a TFO with DEA, I have received
extensive training in the field of narcotics trafficking investigations, including but not

0

limited to, conducting surveillance, smuggling, undercover operations, methods of packaging, utilizing confidential sources, as well as executing arrest and search warrants. In May of 2019 I was promoted from a patrol position to the rank of Special Agent within Texas DPS and assigned to the Amarillo District Office.  Prior to my assignment in the Criminal Investigations Division of DPS, I was a Trooper assigned to the Highway Patrol Division for approximately 5 years. During that time, I made narcotic arrests and assisted in narcotics investigations. During my time as a special agent, the Texas Department of Public Safety Criminal Investigations Division has provided me training in conducting narcotics investigations to include: identification, interdiction, smuggling, clandestine manufacturing, methods of packaging, and distribution of drugs; undercover operations; the laundering of drug proceeds; asset forfeiture; use of confidential sources; and the legal aspects of conducting drug investigations.

5.      I have participated in investigations relating specifically to the possession and distribution of methamphetamine and other drugs. I have also participated in various aspects of investigatory work to include several narcotics-related arrests and execution of many narcotics-related search warrants.  I have written affidavits in support of search and arrest warrants. I have also interviewed defendants regarding various criminal activities, to include narcotics trafficking. These interviews have included discussions of the use and meaning of code words in the sales and distribution of controlled substances. Based on my training and experience, I .am familiar with the methods and practices used by individuals and organizations involved in financial crimes and illicit activities that generate large amounts of income. These methods include cash purchases, the purchase

1

of numerous monetary instruments with cash in amounts at or below $10,000, the use of aliases and nominees, the use of businesses as "fronts" in an attempt to legitimize and conceal their activities, and the use of certain banking activities to conceal a financial paper trail.

6.     I know from my training and experience that individuals who transact in proceeds from illegal activities routinely attempt to further that conduct and/or to conceal the existence and source of their funds by engaging in financial transactions with domestic and foreign institutions, and others, through various financial instruments. These financial instruments include but are not limited to cash, cashier's checks, money drafts, traveler's checks, and wire transfers. I have personally participated in the investigation below and I am familiar with the facts and circumstances through my personal participation, from discussions with other DEA agents and law enforcement officers, and from reviewing records and reports relating to the investigation. Because this affidavit is for the limited purpose of securing seizure warrants for the seizure of funds derived from the sale of narcotics laundered through bank accounts, I have not included details of every aspect of the investigation.

7.     In general, narcotics traffickers amass large amounts of cash proceeds from the sale of narcotics in the United States. Traffickers and their associates frequently attempt to give the impression of legitimacy to those proceeds, i.e., to "launder" them by making the proceeds appear to have been generated by a legitimate source and to convert the US Dollars to local currency. Traffickers must also devise various methods to remit those narcotics proceeds to suppliers of narcotics located in Colombia, Venezuela, and

2

other South American countries, which are known source locations of narcotics, without alerting governmental or law enforcement agencies. To accomplish this goal, narcotics traffickers frequently utilize domestic and foreign banks and/or financial institutions to make their narcotics profits appear to be from legitimate sources and to move those profits through the financial system into the countries where narcotics are produced.

8.      I submit this affidavit in support of an application for a seizure warrant authorizing DEA to seize all accounts held at Bank of America in the names of Arturo CERVANTES, who has a date of birth of 12/17/1970; Yesenia OLMEDO, who has a date of birth of 7/05/1983; and Cristobal VELASQUEZ (or J. Cristobal Velasquez), who has a date of birth of 6/17/1963, as I have sufficient cause to believe that such currency is subject to forfeiture under: (a) 21 U.S.C. § 881(a)(6), as money furnished or intended to be furnished by a person in exchange for a controlled substance, proceeds traceable to such an exchange, and/or money used or intended to be used to facilitate a violation of the Controlled Substances Act, 21 U.S.C. §§ 801-971; and/or (b) 18 U.S.C. § 981(a)(1)(C), as proceeds derived from "specified unlawful activity," as defined in 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1)(D), namely the felonious manufacture, importation, receiving, concealment, buying, selling, or otherwise dealing in a controlled substance. For criminal forfeiture purposes, it is not necessary to show that the property to be seized and forfeited is traceable to the offense giving rise to the forfeiture. If the property has the same value as the property directly involved in the criminal offense, it may be forfeited as a substitute asset. *See* 21 U.S.C. ' 853(p). Further, a seizure warrant

3

authorizing the seizure of forfeitable property may be issued in this district, without regard to the location of the Subject Property. *See* 21 U.S.C. § 853(l).

## PROBABLE CAUSE

9.      On July 29, 2020 Texas Highway Patrol Trooper Max Honesto was working routine patrol on Interstate 40 (IH-40) in Oldham County, Texas. While on patrol, Trooper Honesto conducted a traffic stop on IH-40 near the 42 milepost for a speeding violation on a white Ram pickup truck bearing Arizona registration ATK1135. During the contact, Trooper Honesto identified the driver as, Yesenia OLMEDO of Springfield, Missouri. OLMEDO was operating a rental vehicle that she had rented in Missouri. During Trooper Honesto's contact with OLMEDO, he observed indicators of criminal activity and asked for consent to search the vehicle. OLMEDO then granted Trooper Honesto consent to search the vehicle. During the search, Trooper Honesto believed that the spare tire possibly contained contraband and elected to transport the vehicle and OLMEDO to the Oldham County Sheriff's Office in Vega, Texas for a safer search.

10.     While Trooper Honesto was on the traffic stop with OLMEDO, he observed a maroon Ford pickup truck circling the traffic stop and then park approximately one mile east of his current traffic stop. Trooper Honesto then requested Trooper Shannon Tanck make contact with that vehicle, as he believed the vehicles to be traveling together. Trooper Tanck pulled up to a maroon Ford pickup truck bearing Missouri registration 2DES66. During the contact, Trooper Tanck identified the driver as, ARTURO CERVANTES by a California identification card. CERVANTES made initial statements

4

to Trooper Tanck that he did not know the person in the white truck stopped behind him,

that he was traveling alone, and that he had stopped to find a ranch where a friend

owned/worked. While Trooper Tanck interacted with CERVANTES, Trooper Tanck

detected the odor of marijuana coming from inside the vehicle.  He also learned that the

vehicle CERVANTES was operating was also rented by OLMEDO. At this time,

CERVANTES and his vehicle were also transported to the Oldham County Sheriff's

Office in Vega, Texas for search and interview.

11.    During Trooper Honesto's search of the spare tire on the white Dodge pickup

truck that OLMEDO was operating, Trooper Honesto located nine (9) bundles of a

crystalline substance that later field-tested positive for the presence of methamphetamine.

The total weight of these bundles was approximately nine (9) pounds. The only

contraband found inside the maroon Ford pickup was a small amount of marijuana.

12.    DEA Task Force Officers Malcolm White, Jose Barron, DEA Special Agent

Christopher Brown and DEA Resident Agent in Charge John Brendon responded to the

scene to assist in the investigation. TFO White and SA Brown read OLMEDO her

*Miranda* warnings during an audio-recorded interview. OLMEDO waived her rights and

agreed to make a statement.  Throughout the interview, OLMEDO claimed no knowledge

that the tire was loaded with any contraband. OLMEDO stated that she and

CERVANTES had been dating for approximately 4 ½ years on and off and that

CERVANTES would live with her in Springfield, Missouri for months at a time.

OLMEDO stated that she did not know what CERVANTES currently did for work.

OLMEDO stated that she had rented both trucks from different rental companies at the

5

airport in Springfield. OLMEDO stated that she had to rent both due to CERVANTES' lack of driver license. OLMEDO stated that she incurred partial cost for the rental vehicles. OLMEDO explained that CERVANTES had suggested and organized the trip from Missouri to California to purchase furniture. At the time of the stop, neither vehicle had any items of furniture. OLMEDO granted consent to search her phone and during a cursory search, no obvious evidence was located. OLMEDO stated that she and CERVANTES had made three (3) previous trips to California from Missouri in a similar fashion to the trip they were currently on. OLMEDO agreed with officers that the manner in which she and CERVANTES had conducted these trips was not logical. OLMEDO stated that the first night that she and CERVANTES stayed the night in California on the current trip, and that CERVANTES had borrowed the white truck for a time while OLMEDO stayed at the hotel. OLMEDO stated she did not know where CERVANTES went but that he went alone and was gone approximately one hour.

13.    CERVANTES was interviewed by TFOs White and Barron. CERVANTES stated to Troopers and DEA personnel that though he presented a California Identification card identifying himself as, ARTURO CERVANTES, that this was not his true name. CERVANTES stated that his true name was Cristobal VELASQUEZ. On 7/29/20 evidence was not found to support this assertion by CERVANTES as the California ID came back with a return, and some of CERVANTES' banking documents were under the name of CERVANTES. During the interview, CERVANTES changed his initial story and stated to officers that he did know OLMEDO and that they were dating. CERVANTES claimed no knowledge or culpability in the contraband found in the white

6

truck and emphasized the fact that OLMEDO was driving that vehicle. CERVANTES

never stated anything about traveling to California to purchase furniture but instead stated

they both were there to visit their respective families. CERVANTES adamantly refused

ever driving the white pickup truck on this trip. CERVANTES was generally not

forthcoming in the interview and would continually talk in circles. The interview was

concluded after which CERVANTES was escorted back down to the holding area.

14.     Post interview, and while CERVANTES was being walked downstairs,

CERVANTES continued to speak with TFO Barron and later with Trooper Honesto.

CERVANTES stated that if officers would tell him something that he would tell officers

something.  TFOs Barron and White agreed that it appeared CERVANTES was

attempting to broker a deal for leniency prior to releasing any information. CERVANTES

also granted consent for a search of his cell phone during which TFO Barron located

messages between CERVANTES and an individual identified as Cristobal VELASQUEZ

(DOB: 10/23/1991) who CERVANTES identified as his son, and CERVANTES'

daughter-in-law, VELASQUEZ' wife. TFO Barron noted that the three (3) parties

appeared to be talking in code and that they were sending money back and forth between

each other. CERVANTES stated to Trooper Honesto that he was barely making it

financially and that he worked honestly for his money. TFO White later identified three

separate bank accounts that appeared to be owned by CERVANTES and possible other

co-conspirators with large amounts of currency deposited into them from deposit slips,

ATM receipts, and other banking paperwork located on CERVANTES' person.

CERVANTES and OLMEDO were then both transported to the Randall County Jail in Amarillo, Texas where they were booked in on a federal hold.

15.    During follow-up investigation by TFO White, TFO White discovered CERVANTES' true name to be Cristobal VELASQUEZ-JIMENEZ according to Homeland Security Investigations personnel. This was confirmed through fingerprints that VELASQUEZ-JIMENEZ gave to the Randall County Detention Center upon book-in on 7/29/20 that matched to FBI #: 12329FA6, which comes back to VELASQUEZ-JIMENEZ. On 7/31/2020, VELASQUEZ-JIMENEZ stated to TFO White that he had purchased the social security number of 620140959 and assumed the identity of Arturo CERVANTES. From this point on, Arturo CERVANTES will be referred to be his true name, Cristobal VELASQUEZ-JIMENEZ. VELASQUEZ-JIMENEZ also stated to TFO White that he had illegally purchased his California identification card at the DMV in California. It is believed that VELASQUEZ-JIMENEZ utilized an existing California DMV employee to facilitate this transaction.

16.    During his initial appearance on 7/31/2020, VELASQUEZ-JIMENEZ stated that he had been/was currently employed at "Select Kinetic Farms" in Missouri where he earned approximately $2,400 per month. VELASQUEZ-JIMENEZ also stated that he had been in a workplace accident after which he received a $12,500 settlement, that he was set to receive $8,000 more, and that had approximately $39,000 in his bank account. VELASQUEZ-JIMENEZ also confirmed during his hearing that he owned a 2019 GMC Sierra pickup truck and was making payments on the truck. During TFO White's investigation, employment records through State of Missouri systems were checked.

Under the name of Arturo CERVANTES, no employment or wages had been reported since the last quarter of 2018 at which time the employer showed to be, "LABOR SOLUTIONS OF MO, LLC" of Lewisburg, West Virginia. Employment records were also checked for OLMEDO during which OLEMDO showed to earn $4,463.56 during the most recently reported quarter spanning April – June 2020, or approximately 1,487.85 per month. OLMEDO's employer showed to be, "TRIAD LODGING, LLC".

17.     During her initial appearance held on 7/31/2020, OLMEDO stated that she had approximately $8,000 in her bank account and that two of her children also deposit into the same account. OLMEDO also stated that her approximate monthly income was $1,800 and that her monthly expenses were approximately $1,750. TFO White noted that with this reported income/expenses ratio it would be extremely unlikely to build up any substantial liquid capital in a bank account.

18.     An inquiry with Bank of America (BOA) identified three bank accounts and one credit card account associated with Yesenia OLMEDO (account #355009344409), Arturo CERVANTES (account #354011819004), and J. Cristobal VELASQUEZ (account #355009936710) and credit card account #4400661752719721 that were of interest to investigators. A preliminary review of available bank records for all four accounts disclosed suspicious and unusual transaction activity indicative of drug trafficking, structuring, and money laundering.

### Bank of America Account 9004 - Arturo CERVANTES

Bank records revealed that on 09/22/16, at the BOA branch located at 710 W. Sunshine Street, Springfield, Missouri 65807, an individual who fraudulently identified

9

himself as Arturo CERVANTES opened personal checking account 354011819004.
According to BOA records, CERVANTES is the account holder and sole signatory on
this account and a debit card ending in number 1583 was issued to access this account.
At the time the account was opened, CERVANTES listed his home address as 4435 W.
La Siesta Street, Springfield, Missouri 65802, provided telephone contact number
417/773-7352, and displayed California state identification and a U.S. State Department
photo identification (#A3951847) as proof of his identity.  It should be noted that the
home address provided to BOA by CERVANTES is the same address provided to BOA
by both VELASQUEZ and OLMEDO.  CERVANTES also provided his personal email
address cervantesarturo44@yahoo.com, listed his date of birth as 12/17/70, and provided
Social Security Number 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.  Bank records show that CERVANTES claimed to
be self-employed as a laborer.

　　　To date, a review of available bank records for CERVANTES' 354011819004
BOA account disclosed frequent, suspicious, and unusual cash deposits.  As an example,
during a 14-month period between 5/29/19 and 7/25/20, 91 transactions totaling
$131,166.56 were credited to the account.  Of the 91 credit transactions, 85 were cash
deposits totaling $101,474.00, which represents 77.3% of the total credits to the account.
Included in this cash intake amount were 79 ATM cash deposits totaling $87,944.00
(86.6%) and 6 counter credit cash deposits totaling $13,530.00 (13.4%).  An assessment
of the 85 deposits included bulk cash in amounts ranging from $5.00 to $9,000.00 (5
deposits being under $100.00), with the average cash deposit being approximately
$1,194.00.  Other credits to the account include 4 check deposits totaling $28,053.56

(21.3%), 1 $1,600.00 temporary credit adjustment (1.2%), and 1 $39.00 ACH credit (<1%).

During the same period of time, 209 debit transactions totaling $120,635.53 were made from the account.  Of the 209 debit transactions, 39 were cash withdrawals totaling $47,127.00, representing 39% of all debits; 2 were for the purchase of cashier's checks remitted to a title company totaling $40,000.00 (33.1%); 25 were ACH debits totaling $11,436.18 (9.4%); 137 were debit card transactions totaling $11,035.37 (9.1%); 3 were bank account transfers totaling $8,031.98 (6.6%); 1 was a P2P transaction in the amount of $3,000.00 (2.4%), and 2 were bank fees totaling $5.00 (<1%).  The balance in the 9044 account at the time of the assessment on July 31, 2020, was $23,397.07.

### Bank of America Account 355009344409 – Yesenia OLMEDO

Bank records revealed that on 2/27/18, at the BOA branch located at 710 W. Sunshine Street, Springfield, Missouri 65807, Yesenia OLMEDO opened personal checking account 355009344409.  According to BOA records, OLMEDO is the account holder and sole signatory on this account and bank card number ending 0255 was issued to access this account.  At the time the account was opened, OLMEDO listed her home address as 4435 W. La Siesta Street, Springfield, Missouri 65802, provided telephone contact number 417/920-6562, and displayed Missouri Driver's License #C2305333006 as proof of her identity.  It should be noted that the home address provided to BOA by OLMEDO is the same address provided to BOA by both CERVANTES and VELASQUEZ, who investigators have identified as the same individual.  OLMEDO also provided her personal email address yeseniaolmedo@ymail.com, listed her date of birth

11

as 7/05/83, and provided Social Security Number 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. Bank records also show that OLMEDO claimed to be employed as an office associate at North-West College.

To date, a review of available bank records for OLMEDO's 4409 bank account also disclosed frequent, suspicious, and unusual cash deposits. As an example, during a 14-month period between 5/29/19 and 7/29/20, 174 transactions totaling $135,344.06 were credited to the account. Of the 174 credit transactions, 91 were cash deposits totaling $88,365.78, which represents 65.2% of the total credits to the account. Included in this cash intake amount were 73 ATM cash deposits totaling $74,402 (84.1%) and 18 counter credit cash deposits totaling $13,963.78 (15.8%). An assessment of the 91 deposits included bulk cash in amounts ranging from $25 to $4,000 (5 deposits being under $100), with the average cash deposit being approximately $971. Other credits to the account include 18 ACH credits totaling $14,328.77 (10.5%), 13 check deposits totaling $8,964.76 (6.6 %), 6 debit card credits totaling $559.04 (<1%), 4 refund credits totaling $153.32 (<1%), 30 P2P credits totaling $12,972.00 (9.5%), 8 return items totaling $2,324.40 (1.7%), 2 teller transfers totaling $7,632.00 (5.6%), and 2 miscellaneous credits totaling $43.99 (<1%).

During the same period of time, 806 debit transactions totaling $121,750.39 were made from the account. Of the 806 debit transactions, 35 were cash withdrawals totaling $43,401.50, representing 35.6 % of all debits; 93 were ACH debits totaling $21,080.80 (17.3%); 608 were debit card transactions totaling $26,693.89 (21.9%); 29 were bank fees totaling $578.31 (< 1%); 4 were mobile purchase debits totaling $57.96 (< 1%); 31 were P2P debits transactions totaling $20,817.93 (17 %), and 6 were account transfers

totaling $9,120.00 (7.4 %).  The balance in the 4409 account at the time of the assessment on July 29, 2020 was $13,736.71.

### Bank of America Account 355009936710 – J. Cristobal VELAZQUEZ

Bank records revealed that on 9/11/18, at the BOA branch located at 633 W. Kearney Street, Springfield, Missouri 65803, J. Cristobal VELAZQUEZ opened personal checking account 355009936710.  According to BOA records, VELAZQUEZ is the account holder and sole signatory on this account and the ATM card number ending in 7163 was issued to access this account.  At the time the this account was opened, VELAZQUEZ listed his home address as 4435 W. La Siesta Street, Springfield, Missouri 65802, provided telephone contact number 626/622-0949, and displayed Mexico Consular Identification (#2700340) as proof of his identity.  It should be noted that the home address provided to BOA by VELAZQUEZ is the same address provided to BOA by both CERVANTES and OLMEDO.  As previously stated, investigators believe VELAZQUEZ fraudulently used the fictitious name of Arturo CERVANTES when opening previous accounts at BOA in order to conceal the laundering of his drug proceeds, avoid BSA reporting requirements, and to prevent detection by law enforcement.  VELAZQUEZ also provided his personal email address yeseniaolmedo@ymail.com (also used by Yesenia OLMEDO), listed his date of birth as 6/15/63, and provided Social Security Number 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.  Bank records show that VELAZQUEZ claimed to be employed as a laborer with Rubio's Restaurant.

To date, a review of available bank records for VELAZQUEZ 's 6710 bank account also disclosed frequent, suspicious, and unusual cash deposits.  As an example,

13

during a 14-month period between 6/07/19 and 7/24/20, 70 transactions totaling $87,800.00 were credited to the account. Of the 70 credit transactions, 70 were cash deposits totaling $87,800.00, which represents 100% of the total credits to the account. Included in this cash intake amount were 67 ATM cash deposits totaling $85,600.00 (97.5%) and 3 counter credit cash deposits totaling $2,200.00 (2.5%). An assessment of the 70 deposits included bulk cash in amounts ranging from $5.00 to $3,450.00 (3 deposits being under $100), with the average cash deposit being approximately $1,254.00. There were no other credits to this account.

During the same period of time, 57 debit transactions totaling $51,003.59 were made from the account. Of the 57 debit transactions, 28 were cash withdrawals totaling $36,180.00, representing 70.9 % of all debits; 13 were debit card transactions totaling $1,044.51 (2 %); 14 were transfers totaling $13,755.08 (26.9 %), and 2 were bank fees totaling $24.00 (< 1%). The balance in the 6710 account at the time of the assessment on July 29, 2020 was $44,807.77.

**Bank of America Credit Card Account 4400661752719721 – J. Cristobal VELAZQUEZ**

Bank records revealed that on 1/09/09, J. Cristobal VELAZQUEZ opened personal credit card account ending in 9721 with BOA. According to BOA records, VELAZQUEZ is the documented account holder and listed YESENIA OLMEDO as an authorized user. The account shows VELAZQUEZ listed his home address as 35 W. La Siesta Street, Springfield, Missouri 65802 and provided telephone contact number 626/622-0949.

14

A preliminary review of credit card activity during a 7-month period between 1/06/20 and 7/29/20, identified 128 credit card purchase transactions totaling $13,735.75 that were posted to the account. A review of available transaction data showed that during 57 of the 128 purchase transactions totaling $8,603.68, the credit card was physically swiped in 6 states; during 9 of the 128 transactions totaling $1,518.30, the credit card was keyed in 3 states; and that during 23 of the purchase transactions totaling $968.66, the credit card was used during an internet or phone order in 5 states. No mode data was available for the remaining 39 transactions.

Overall, during the 7-month period reviewed, the data shows that credit card purchases were made from 26 cities in 10 states predominantly for the purchase of gas, car rental, food, hotel, and other miscellaneous travel expenses. Cities and states where transactions were conducted include; Amarillo, Texas; Barstow, California; Clinton, Missouri; Edgewood, New Mexico; Elk City, Oklahoma; Englewood, Colorado; Flagstaff, Arizona; Fort Worth, Texas; Gallop, New Mexico; Glenrio, Texas/New Mexico; Groom, Texas; Hinton, Oklahoma; Hualapai, Arizona; Joseph City, Arizona; London, Ohio; Milan, New Mexico; Needles, California; Oklahoma City, Oklahoma; Paraje, Mexico; Santa Rosa, California; Springfield, Missouri; Tucumcari, New Mexico; Tulsa, Oklahoma; Vinita, Oklahoma; Weatherford, Texas; and Williams, Arizona. A review of the credit card use data during the period 7/26-29/20, just days prior to VELAZQUEZ' and OLMEDO's arrest near Amarillo, Texas, shows credit card use in Springfield Missouri; Clinton, Missouri; Tulsa, Oklahoma; Oklahoma City, Oklahoma; Glen Rio, Texas; Edgewood, New Mexico; Barstow, California; Flagstaff, Arizona;

15

Gallup, New Mexico; and Santa, Rosa, California, demonstrating travel between Springfield, Missouri and Santa Rosa, California.

Based on a review of the financial transactions in VELAZQUEZ' and OLMEDO's BOA accounts, which includes the transactions in VALAZQUEZ' BOA 9004 account in the name of Arturo CERVANTES, the activity in the accounts are deemed suspicious because the cash deposits are unusual, frequent, and excessive for these types of personal accounts; the source and purpose of the cash deposits are unknown; the number of accounts that were opened are not justified by the account transaction activity; there are no employment or salary credits made into any of VELAZQUEZ' accounts and one of his accounts was opened in a fraudulent manner and in a fictitious name to conceal money laundering activities; OLMEDO's $12,291.26 employment salary for 2020 as listed in the Missouri Employment Security Database and 8 salary credits totaling $2,634.33 made into her 4409 account in 2019 does not account for the $135,344.06 in credits ($88,365.78 of which was made in cash) into her account over the past 14 months; and the account activity does not appear to have any economic, business, or lawful purpose. Additionally, a majority of the 246 cash deposits where the source of funds are unknown are made on the same, consecutive, or near consecutive days and frequently at different branch locations, which is indicative of structuring to avoid BSA reporting requirement. Also suspicious is the use of cash deposits to purchase cashier's checks and pay debits issued to individuals where the relationships and purpose of the payments are not known.

In summary, based on (1) the vehicle stop of OLMEDO and seizure of 9 pounds of methamphetamine from her rental vehicle in Texas; (2) the interview of VELAZQUEZ who was also operating a vehicle rented by OLMEDO and who pulled off the road to watch OLMEDO and their drug load when she was stopped for speeding; (3) the false statements made to the Texas Trooper by VELAZQUEZ who stated he was looking for a friend's house when in fact he was following OLMEDO and his load of methamphetamine to ensure its safe transportation across state lines to Springfield, Missouri; (4) the fact that OLMEDO and VELAZQUEZ were traveling in separate rental vehicles while driving to their shared residence in Springfield, Missouri, which is indicative of precautions taken by drug traffickers engaged in the transportation of bulk drugs across the U.S. public interstate highway system; (5) the Bank of America ATM receipts found in VALAZQUEZ' possession that identified recent $800.00 cash deposit and $100.00 withdrawal transactions into and from his BOA his 6710 and 9004 accounts, which cash was likely used to facilitate their travel to obtain the 9 pounds of methamphetamine; (6) the fraudulent criminal actions and false statements VELAZQUEZ committed and made to Bank of America to establish a false identity in order to open his 9044 account and others in the name of Arturo CERVANTES in an attempt to conceal his money laundering and drug trafficking activities; (7) the employment security inquiry with the Department of Revenue that shows no record of employment history for VELAZQUEZ in Missouri and that CERVANTES has not been employed since December 2018; (8) there were no salary or employment credits or direct deposits made to any of VELAZQUEZ' accounts and OLMEDO's BOA account only

17

showed 8 employment credits totaling $2,634.33 in 2019; (9) the combined structuring in the 9004, 4409, and 6710 accounts where on 52 days, 2-5 structured cash deposits were made each day, oftentimes at multiple branches to avoid the BSA reporting requirements (see chart); (10) the opening of the BOA 9004 account by VELAZQUEZ in a fictitious name, date of birth, and Social Security number thus using advanced methods of structuring cash deposits from drug proceeds to conceal his money laundering activities and avoid the BSA reporting requirements; and (11) the financial analysis that shows 246 cash deposits totaling $277,639.00 from an unknown source of funds ($101,474.00 (77%) in cash from VELAZQUEZ' (CERVANTES') BOA 9004 account, $88,365.78 (65%) in cash from OLMEDO's BOA 4409 account, and $87,800.00 (100%) in cash from VELAZQUES' BOA account), investigators believe and the evidence suggests that Yesenia OLMEDO and J. Cristobal VELAZQUEZ are involved in the distribution of multi-pound quantities of methamphetamine in the Springfield, Missouri metropolitan area and are using their 9004, 4409, and 6710 accounts at Bank of America to structure and launder their drug proceeds through these bank accounts in violation of Title 21 USC 841 and 846 and Title 18 USC, Sections 1956(a)(1) and (a)(2), Title 18 USC Section 1956(h), Title 18 USC Section 1957, and Title 18 USC, Sections 1952.

19.    The known banking institutions, bank account numbers, debit card number, and balances as of July 31, 2020 are as follows:

| Account Holder | Bank | Account Number | | Balance |
|---|---|---|---|---|
| | | | | |

| Cervantes | Bank of America | 354011819004 | | $ 23,397.07 |
|-----------|-----------------|--------------|--------------|-------------|
| Olmedo | Bank of America | 355009344409 | | $ 13,736.71 |
| Velasquez | Bank of America | 355009936710 | | $ 44,807.77 |
| | | | **Total Balance** | **$81,941.55** |
| | | | | |

## CONCLUSION

20.         Based on the foregoing, I believe there is probable cause to believe that the

funds at Bank of America in the names of Arturo CERVANTES, Yesenia OLMEDO, and

Cristobal VELASQUEZ (or J. Cristobal Velasquez) constitute the direct or indirect

proceeds of illicit transactions involving controlled substances, or were used or intended

to be used to facilitate such illicit transactions in violation of the Controlled Substances

Act, and therefore, such funds are forfeitable to the United States pursuant to 21 U.S.C.

§ 881(a)(6) and 18 U.S.C. § 981(a)(1)(C), and in accordance with 18 U.S.C. § 983.

_____
Malcolm T. White, Task Force Officer
U.S. Drug Enforcement Administration

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1
by telephone.

___8/5/2020_____ at ___Amarillo, Texas_____
Date                                              City and State

_____
Lee Ann Reno
United States Magistrate Judge

19